UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-cv-61384-BLOOM/Valle

JENETTE HICKS,

      Plaintiff,

vs.

COMCAST CABLE COMMUNICATION,
LLC, *et al.*,

      Defendants.

## OMNIBUS ORDER

**THIS CAUSE** is before the Court upon Defendant Comcast Cable Communication, LLC's ("Comcast") Motion to Compel Arbitration and Stay Litigation, ECF No. [23], (the "Arbitration Motion"). Defendant iPacesetters, LLC ("iPacesetters") and Elizabeth Renter ("Defendant Renter") have joined in Comcast's Arbitration Motion. *See* ECF Nos. [32], [63]. In the event the Court grants Comcast's Arbitration Motion but declines to include iPacesetters in its order to arbitrate, iPacesetters has also moved to stay the action pending the outcome of the arbitration between Comcast and the Plaintiff. ECF No. [32]. In addition to its joinder of Comcast's Arbitration Motion, Defendant Renter ("Defendant Renter") also filed a Motion to Dismiss Plaintiff's Amended Complaint, ECF No. [62].[1] Defendants Comcast and iPacesetters have also moved to stay discovery and pretrial proceedings pending the resolution of Comcast's Arbitration Motion. ECF No. [61]. The Court has carefully reviewed the aforementioned

---

[1] On December 10, 2018, Plaintiff filed a Notice of Suggestion of Death of Defendant Elizabeth Renter indicating that Defendant Renter died on November 17, 2018, and attaching an obituary evidencing the same. *See* ECF No. [73]. In light of Defendant Renter's passing, the Motion to Dismiss, ECF No. [62], is denied as moot.

motions, the parties' supporting and opposing briefs, the applicable law, the record and is otherwise fully advised.

## I. BACKGROUND

On or about June 22, 2017, Comcast through its sales representative Defendant Renter, called the Plaintiff, its former customer, in an attempt to re-initiate cable services with her. *Id.* at ¶ 19. Plaintiff tried to politely decline the offer to renew or reinitiate a contract. *Id.* at ¶ 24. Plaintiff claims she was called by Defendant Renter numerous times. *Id.* at ¶ 21. Plaintiff alleges that the calls initially started off "friendly," however, later became contentious. *Id.* at ¶¶ 20, 24. Plaintiff indicated to Defendant Renter that she did not want to be contacted by Comcast again. *Id.* at ¶ 28.

Plaintiff claims Defendant Renter called her home approximately eight times on June 22, 2017. *Id.* at ¶ 21. At the conclusion of one of the sales calls, Defendant Renter called the Plaintiff back using a "private" telephone number to disguise her identity. *Id.* at ¶ 27. Plaintiff answered, recognized the caller's voice as Defendant Renter's, reiterated that she was not interested in the services being offered, and then hung up the phone. *Id.* at ¶ 28. During one of the final calls from Defendant Renter, Plaintiff told Defendant Renter that she did not want any more calls and to leave a message. *Id.* at ¶ 30.

Defendant Renter called another time and left the following message on the Plaintiff's voicemail: "You got the right woman, n*gger! You talk a lot of sh*t over the f*cking phone, don't you? Good thing I got your address. N*gger!" *Id.* at ¶ 32. Plaintiff and her children could hear the message out loud while it was being recorded. *Id.* Plaintiff alleges that she and her children were horrified, shocked and humiliated by the message left by Defendant Renter. *Id.* at ¶ 34. Plaintiff claims she was afraid for herself and her family. *Id.* at ¶ 35. Plaintiff then

reported the incident to the local authorities and to the Federal Trade Commission. *Id.* at ¶¶ 36, 39.

On August 22, 2018, Plaintiff filed her First Amended Complaint against Comcast, iPacesetters and Defendant Renter. ECF No. [19]. In response to Plaintiff's First Amended Complaint, Comcast filed the Arbitration Motion. ECF No. [23]. Comcast claims that the "Comcast Agreement for Residential Services" (the "Subscriber Agreement") governs Plaintiff's relationship with Comcast. *Id.* at 2; *see also* ECF No. [24], at 20. The Subscriber Agreement contained a broad arbitration provision, which stated as follows:

> **13. BINDING ARBITRATION:**
> **a. Purpose.** Any Dispute involving you and Comcast shall be resolved through individual arbitration. In arbitration, there is no judge or jury and there is less discovery and appellate review than in court.
> **b. Definitions.** This Arbitration Provision shall be broadly interpreted. "Dispute" means any claim or controversy related to Comcast, including but not limited to any and all: (1) claims for relief and theories of liability, whether based in contract, tort, fraud, negligence, statute, regulation, ordinance, or otherwise; (2) claims that arose before this or any prior Agreement; (3) claims that arise after the expiration or termination of this Agreement, and (4) claims that are currently the subject of purported class action litigation in which you are not a member of a certified class. As used in this Arbitration Provision, "Comcast" means Comcast and any of its predecessors, successors, assigns, parents, subsidiaries, and affiliates, and each of their respective officers, directors, employees and agents, and "you" means you and any users or beneficiaries of the Service(s).
> **c. Exclusions.** Notwithstanding the foregoing, the following disputes will not be subject to arbitration: (i) disputes relating to the scope, validity, or enforceability of this arbitration provision; (ii) disputes that arise between Comcast and any state or local regulatory authority or agency that is empowered by federal, state, or local law to grant a franchise under 47 U.S.C. § 522(9); and (iii) disputes that can only be brought before the local franchise authority under the terms of the franchise. D. Right to opt out. If you do not wish to arbitrate disputes, you may decline to have your disputes with Comcast arbitrated by notifying Comcast in writing, within 30 days of the date that you first receive this agreement or by visiting www.comcast.com/arbitrationoptout, or by mail to Comcast 1701 John F. Kennedy Blvd., Philadelphia, PA 19103-2838, Attn: legal department/arbitration. Your written notification to Comcast must include your name, address and Comcast account number as well as a clear statement that you do not wish to resolve disputes with Comcast through arbitration. Your decision to opt out of this arbitration provision will have no adverse effect on your relationship with

> Comcast or service(s) provided by Comcast. If you have previously opted out of arbitration with respect to the account governed by this agreement, you do not need to do so again. You must separately opt out for each account under which you receive services.

ECF No. [18-1], at 33.

Comcast claims that over the course of the 10 years that Plaintiff was a Comcast subscriber, she would have received the Subscriber Agreement numerous times. *Id.* at 2. Comcast contends that the Plaintiff would have also received a copy of the Subscriber Agreement when a technician was dispatched to the Plaintiff's home to transfer Comcast's services to a new address on June 29, 2018. *Id.* Comcast claims that Plaintiff failed to timely opt out of the arbitration agreement and is thus bound by the agreement's terms. ECF No. [23], at 11.

Plaintiff contends that she never received the Subscriber Agreement before it was delivered to her through her counsel on July 25, 2018. ECF No. [36], at 3-4. Plaintiff claims upon receipt of the Subscriber Agreement, she timely opted out of the arbitration provision. *Id.* at 4. Plaintiff posits that no valid arbitration agreement exists between the parties. Alternatively, she argues that her claims are not bound by the arbitration agreement because she terminated her service agreement with Comcast prior to the incident that gives rise to this action. *Id.* at 10-12. Plaintiff further argues that her claims do not fall under the scope of the arbitration agreement and public policy prevents Plaintiff's claims from being forced into arbitration. *Id.* at 16, 19-21.

Defendant iPacesetters has joined in Comcast's Arbitration Motion. ECF No. [32]. iPacesetters argues that because the arbitration agreement language extends to Comcast's agents and Plaintiff has directly alleged iPacesetters is an agent of Comcast, iPacesetters can also invoke the arbitration provision and therefore joins Comcast's Arbitration Motion. *Id.* at 4-5. Alternatively, in the event the Court grants Comcast's Arbitration Motion, but declines to

include iPacesetters in its order to arbitrate, iPacesetters moves the Court to stay the action pending the resolution of arbitration. *Id.* at 6. Plaintiff does not address iPacesetters' argument that as an agent of Comcast it can also invoke Comcast's arbitration agreement under the contract. Rather Plaintiff claims that the Court should deny iPacesetters' Motion to Compel Arbitration for essentially the same reasons it should deny Comcast's Arbitration Motion, because there is not a valid agreement to arbitrate, the claims do not fall under the scope of the arbitration agreement and public policy prevents Plaintiff's claims from being forced in to arbitration. ECF No. [45], at 2.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that pre-dispute agreements to arbitrate "evidencing a transaction involving commerce" are "valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects "a liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 339 (2011). Section 3 of the FAA further states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

"Under both federal and Florida law, there are three factors for the court to consider in determining a party's right to arbitrate: (1) a written agreement exists between the parties containing an arbitration clause; (2) an arbitrable issue exists; and (3) the right to arbitration has not been waived." *Sims v. Clarendon Nat. Ins. Co.,* 336 F. Supp. 2d 1311, 1326 (S.D. Fla. 2004)

(citing *Marine Envtl. Partners, Inc. v. Johnson,* 863 So. 2d 423, 426 (Fla. 4th DCA 2003) and *Seifert v. U.S. Home Corp.,* 750 So. 2d 633 (Fla. 1999)).

Confronted with a facially valid arbitration agreement, the burden is on the party opposing arbitration to demonstrate that the agreement is invalid or the issue is otherwise non-arbitrable. *Green Tree Fin. Corp.-Alabama v. Randolph,* 531 U.S. 79, 92 (2000) ("[T]he party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue."); *In re Managed Care Litig.,* No. 00-1334-MD, 2009 WL 856321, at *3 (S.D. Fla. Mar. 30, 2009) ("It is the burden of the party challenging a facially valid arbitration agreement to demonstrate that the agreement is in fact unconscionable."). "By its terms, the [FAA] leaves no room for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 213 (1985) (emphasis in original). Thus, if the aforementioned criteria are met, the Court is required to issue an order compelling arbitration. *John B. Goodman Ltd. P'ship v. THF Const., Inc.,* 321 F.3d 1094, 1095 (11th Cir. 2003) ("Under the FAA, 9 U.S.C. § 1 *et seq.,* a district court must grant a motion to compel arbitration if it is satisfied that the parties actually agreed to arbitrate the dispute."); *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.,* 553 F.3d 1351, 1366 (11th Cir. 2008) ("The role of the courts is to rigorously enforce agreements to arbitrate.") (citation omitted).

### III. DISCUSSION

The threshold question of whether an arbitration agreement exists at all is "simply a matter of contract." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 1924 (1995). Absent such an agreement, "a court cannot compel the parties to settle their

dispute in an arbitral forum." *Bazemore v. Jefferson Capital Sys.*, LLC, 827 F.3d 1325, 1329 (11th Cir. 2016) (citing *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004)). The FAA creates a "presumption of arbitrability" such that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1115–16 (11th Cir. 2014) (quotation marks omitted), *cert. denied*, ––– U.S. ––––, 135 S. Ct. 144, 190 L.Ed.2d 231 (2014); *see Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301, 130 S.Ct. 2847, 2858–59, 177 L.Ed.2d 567 (2010). However, "while doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Dasher*, 745 F.3d at 1116 (quotation marks omitted); *see Granite Rock*, 561 U.S. at 301, 130 S.Ct. at 2858–59 (directing courts to "apply[ ] the presumption of arbitrability only" to "a validly formed and enforceable arbitration agreement").

In *Bazemore v. Jefferson Capital Systems, LLC*, the Eleventh Circuit Court of Appeals held that a "district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement *only if* there is no genuine dispute as to any material fact" concerning the formation of such an agreement. *Bazemore*, 827 F.3d 1325, 1333 (11th Cir. 2016) (emphasis added). Here, the Court is unable to conclude that the parties have or have not entered into an arbitration agreement because a genuine dispute exists.

In support of its Arbitration Motion, Comcast has submitted an affidavit from Nicole Patel (the "Patel Affidavit"), Director of Operations/Regulatory Compliance at Comcast Corporation, in which she states that it was Comcast's "routine and regular business practice for its technicians to provide the Subscriber Agreement with terms and conditions of service to customers when a technician performs a professional installation or transfer of services." ECF

No. [18-1], at ¶ 5. The Patel Affidavit confirms that a Comcast technician was dispatched to Plaintiff's home on June 29, 2016. *Id.* at ¶ 4. The Patel Affidavit also indicates that the Plaintiff "received an update to the Subscriber Agreement in February 2009." *Id.* at ¶ 5. The Patel Affidavit also attaches two versions of the Comcast Subscriber Agreement, which it claims were the operative agreements during 2016 and 2017. *Id.* at ¶¶ 6, 8.

Plaintiff has also filed an affidavit in support of her Opposition to Comcast's Arbitration Motion. ECF No. [36]. In Plaintiff's affidavit she states "[w]hen I allowed Comcast's employee(s) to enter my house in order to install equipment for their cable services to be provided to me, at no time did any Comcast employee directly provide me with the contract for terms and conditions of service. At no time did any Comcast employee ever direct me to read and accept any contract with Comcast and at no time did any Comcast employee advise me of any arbitration agreement that I would potentially have to enter into with Comcast." ECF No. [36-1], at ¶ 9. Plaintiff further claims that she received the agreement containing the arbitration provision for the first time on August 18, 2018, which was after the commencement of the instant action. *Id.* at ¶ 4. On that same day, Plaintiff sent a letter to Comcast exercising her opt-out rights under the agreement, which was received by Comcast on August 23, 2018. *Id.* at ¶¶ 4-5.

Both Plaintiff and Comcast have provided sworn affidavits proffering conflicting testimony as to whether a valid agreement to arbitrate was in existence. The Court notes that the subscriber agreements attached to the Patel Affidavit are unsigned and do not otherwise evidence whether they were in fact received by the Plaintiff. Therefore, the only evidence in the record regarding whether a valid agreement to arbitrate was in place are the conflicting affidavits

proffering contradictory testimony. Those affidavits place at issue the existence of a valid agreement to arbitrate.

Pursuant to 9 U.S.C. § 4, "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue." 9 U.S.C. § 4. Accordingly, because the question of whether an agreement to arbitrate exists is in issue, this case will proceed summarily to trial on the question of whether the Plaintiff entered into a valid agreement to arbitrate. *See Hilton v. Fluent, LLC*, 297 F. Supp. 3d 1337, 1342 (S.D. Fla. 2018) (ordering a bench trial be held where there was a genuine issue of fact regarding the issue of whether an agreement to arbitrate existed.).

A party must specifically demand trial by jury as to the issue of the existence of an agreement to arbitrate in accordance with the procedures laid out in 9 U.S.C. § 4. To preserve a party's statutory right to a jury trial concerning the making of an arbitration agreement, the party alleged to be in default is obligated to demand a jury trial of "*such issue*" "on or before the return day of the notice of application" to submit to arbitration. *Ryan Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1349 (11th Cir. 2017) (holding that a party waived his right to a jury trial on the issue of whether an agreement to arbitrate had been made where the party failed to demand a jury trial on such issue as provided by 9 U.S.C. § 4.). Plaintiff has not demanded a trial by jury as to this issue in accordance with the provisions of with 9 U.S.C. § 4. *Ryan Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1349 (11th Cir. 2017); *see also Hilton*, 297 F. Supp. 3d at 1341-1342. Accordingly, the Court will hear evidence and determine this issue in the present case.

Defendants Comcast and iPacesetters have also filed a Motion to Stay Discovery and Pretrial Proceedings pending the resolution of the Arbitration Motion. ECF No. [61]. Given that the Court will conduct a factual finding regarding the issue of whether an arbitration agreement existed between the parties, the Court finds that the granting of the Motion to Stay Discovery and Pretrial Proceedings, ECF No. [61], would inhibit the Parties' ability to adequately prepare for the bench trial. The Parties may very well need to engage in discovery in order to prove the issue of whether a valid arbitration agreement existed between them. Accordingly, the Court will deny that Motion, ECF No. [61], at this time.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant Comcast's Second Motion to Compel Arbitration and Stay Action, **ECF No. [23]**, and Defendant iPacesetters' Joinder in Comcast's Motion to Compel Arbitration and Stay Action, **ECF No. [32]** are **DENIED without prejudice.**

2. A bench trial will be held pursuant to 9 U.S.C. § 4 to determine the existence of a binding arbitration agreement. Trial will commence on **Monday, February 4, 2019**, at **9:00 a.m.** in **Courtroom 10-2 at the Wilkie D. Ferguson, Jr. United States Courthouse, 400 North Miami Avenue, Miami, FL 33128.**

3. Defendants Comcast and iPacesetters' Motion to Stay Discovery and Pretrial Proceedings, **ECF No. [61],** is **DENIED**.

4. Defendant's Motion to Dismiss, **ECF No. [62],** is **DENIED as moot.**

**DONE AND ORDERED** in Miami, Florida, this 12th day of December, 2018.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record